United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH FUENTES ORTIZ, | |
| Petitioner, | No. C 04-3338 PJH (PR) |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| GLORIA HENRY, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court.  Petitioner has responded, opting not to file a traverse.  The matter is submitted.

**BACKGROUND**

Petitioner Elizabeth Fuentes Ortiz was convicted at a jury trial in San Mateo County of attempted murder, *see* Cal. Penal Code §§ 664, 187, and concealing a child, *see id.* § 278.5.  As to the attempted murder, the jury found true the allegation of premeditation.  *See id.* § 189.  Additionally, the jury found true that Fuentes Ortiz intended to inflict great bodily injury, and that great bodily injury did in fact result.  *See id.* §§ 12022.7(a), 1203.075(a)(1). The court sentenced Fuentes Ortiz to a term of life with the possibility of parole, plus six years for the sentencing enhancements.  Fuentes Ortiz also was ordered to pay restitution.

The California Court of Appeal affirmed Fuentes Ortiz' convictions and sentence, with a modification not relevant here.  The California Supreme Court denied Fuentes Ortiz' application for review.

As grounds for habeas relief, Fuentes Ortiz asserts that:

(1) The trial court's refusal to instruct on self-defense violated her due process rights;

(2) The trial court's instruction to the jury on destruction of evidence violated her due process rights; and,

(3) The trial court's imposition of victim restitution violated her right to be free from ex post facto applications of the laws.

Fuentes Ortiz does not dispute the following facts, which are taken from the opinion of the California Court of Appeal:

> On March 11, 1992, Gilbert Ortiz (the victim) was given a poisoned milkshake by appellant, his wife, under the pretense that the shake was some sort of "amino acid drink" intended to make the victim more muscular. In fact, the shake was laced with a deadly insecticide. Appellant delivered the poisoned shake to the victim while he was working at Toys R Us in Redwood City. Appellant left Toys R Us before the victim drank the shake. The victim became violently ill after consuming the shake and was rushed to the hospital.
>
> When the victim was admitted to the hospital, the cause of his illness was unknown. At the hospital, the victim's condition deteriorated, he became increasingly disoriented and was unable to provide doctors with details about the cause of his illness. No one knew that appellant had given the victim the poisoned milkshake. When the victim lingered in critical condition in the intensive care unit, appellant claimed ignorance about the cause of his condition.
>
> However, on the second day of the victim's hospitalization, appellant arrived at the hospital crying and upset. She was carrying a paper bag containing a bottle of liquid insecticide that was three-quarters full. She gave the bag to medical personnel, claiming that a young boy and a masked man had approached her in the parking lot and given her the bag, along with a cryptic message–that the contents of the bag were what the victim had to drink and that if she went to the police, her husband and child would be killed. Police were called to the hospital to investigate a possible poisoning. Appellant was approached at the hospital by an officer who asked if she would be willing to go to the police department for an interview. Appellant agreed.
>
> Appellant went to the police station and answered questions. The tape-recorded interview was played for the jury at trial. Much of the questioning centered on the quality of the victim's and appellant's marriage and any problems the couple may have had. When asked in the interview whether her husband beat her, appellant replied, "no." She claimed that her husband was a nice person who treated her well. She also reported that she and her husband had no recent fights and "we just had sex . . . the night before" he was poisoned. The police questioned appellant at length about the little boy and masked man who allegedly provided her with the paper bag containing the insecticide. The officers eventually told appellant they didn't believe the story about the boy and the masked man and asked her to be honest with them. The officers pressed her about her involvement in her husband's poisoning.
>
> Shortly thereafter, appellant said she needed to go to a job interview

and was allowed to leave the police station. Before she left the police station, another interview was scheduled. However, appellant failed to keep her appointment. Instead, appellant fled to Mexico with the couple's two-year-old child. She and the child lived in Mexico for eight years without any word to the victim about their child's well-being. Appellant was found in Mexico in March 2000, and returned to San Mateo County for prosecution of the present offenses.

At trial, the victim's treating physicians and family members testified about his long and slow recovery from the poisoning. Over the course of his recovery, the victim suffered cardiac arrest, respiratory failure, lung collapse, and other significant ailments, including nerve damage. His weight dropped from 145 to 90 pounds. The victim endured months of pain as he recovered at his parents' home. Because of the burning sensation in his legs and feet, at the beginning, he could not walk–he had to crawl instead. He gradually went from a crawler, then crutches, to walking unassisted. The victim testified that he still feels pain in his legs and numbness in his hands as a result of the poisoning.

Appellant testified in her own defense at trial. She admitted giving the victim a poisoned milkshake on March 11, 1992, and then lying to the police and hospital staff about what happened. She claimed, "It was never my intention to kill my husband. I gave him something to make him sick." She testified that she poisoned her husband after he had physically abused her on five or six occasions. An incident six months before she poisoned him was the worst episode of abuse. Based on appellant's allegation of domestic violence and child abuse, the Daly City police arrested the victim. However, charges were never filed; and shortly thereafter, appellant reconciled with the victim.

Appellant testified that the night before she poisoned her husband, he had asked for sex. After she said no, he forced her to have sex with him. He also threatened to kill her, "'cause I mentioned that our relationship wasn't working, and I required a divorce."

On the morning of March 11, 1992, appellant admitted calling her husband at Toys R Us where he worked and asking if she could bring him lunch. She admitted that during the phone conversation, she was already planning to poison him. After the phone conversation, she purchased the insecticide with the express purpose of poisoning her husband. She knew that the victim, who was small in stature, wanted to be a stronger, more muscular man. She knew that if she told him this was an amino acid shake, he would not question the unusual taste or smell.

At trial, Nancy Lemon, a domestic violence consultant, testified as an expert witness for the defense. She defined a battered woman as one who has suffered physical, sexual, and/or psychological abuse. She explained that battered women seldom reveal their abuse to others. She had interviewed appellant and had reviewed the police reports written in connection with the poisoning and the reported incident of domestic violence. In her opinion, appellant poisoned the victim because of the domestic violence she suffered.

The victim testified in rebuttal that he never forced appellant to have sex with him nor did he threaten to kill her. Patty Morazan testified that she had known the victim for 12 years. They had lived together and had a daughter together. She testified that during their relationship, the victim was never physically or sexually abusive to her.

Ex. 5 at 2-4.

3

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 123 S. Ct. at 1041. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

4

1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El*, 123 S. Ct. at 1041; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

**1.   The trial court's refusal to instruct the jury on self- defense did not violate petitioner's due process rights.**

Petitioner contends that the trial court's refusal to instruct on self-defense violated her due process rights.  The California Court of Appeal rejected this claim, saying that there was not substantial evidence to support giving self-defense instructions.  Ex. 5 at 7.[1]

It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case.  *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence).  The Due Process Clause "requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'"  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Failure to instruct on the theory of defense violates due process if

---

[1] The court "looks through" the unexplained California Supreme Court denial of review to the last reasoned opinion, that of the California Court of Appeal.  *See Shackleford*, 234 F.3d 1079 n. 2.

5

"'the theory is legally sound and evidence in the case makes it applicable.'" *Id.* at 904-05 (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)).

Due process does not require a trial court to provide a requested jury instruction unless the "evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982). A state court's finding that there was not substantial evidence to support giving a requested instruction is entitled to a presumption of correctness on habeas review. *Menendez v, Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).

The court of appeal determined as a matter of California law, which is binding on this court, *see Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005), that self-defense requires an actual and reasonable belief on the part of the defendant that he or she is in imminent danger of death or great bodily injury. Ex. 5 at 5-6. If the person claiming self-defense has the necessary subjective belief but it is *un*reasonable, that is "imperfect self-defense," which prevents conviction of murder but allows a conviction of manslaughter. *Id.* At issue here is whether there was substantial evidence that petitioner had an actual subjective belief that she was in *imminent* danger of death or serious injury such that the trial court was required to instruct on self-defense.

Petitioner contended that this evidence supported giving self-defense instructions: (1) She had been physically abused and threatened by the victim "multiple" times; (2) the victim had raped her and threatened to kill her the night before she poisoned him; (3) the victim had physically abused their child; and (4) she suffered from Battered Woman's Syndrome ("BWS"). *Id.* This is certainly evidence that petitioner was abused, and may have had a genuine fear that she might be killed; but not one of these points goes to the question of whether the danger was *imminent*.

The California Court of Appeal relied on the following evidence presented by the prosecution to determine that there was not substantial evidence that Fuentes Ortiz acted in self-defense:

> Appellant admitted on cross-examination that on the morning of March 11, 1992, she called the victim at the Toys R Us store where he worked, asking if she could bring him lunch. During that phone conversation she was

6

already planning to poison him.  The Toys R Us store where [the victim] worked was in Redwood City, 15-20 minutes from the couple's apartment in East Palo Alto.  She admitted that the victim was planning to be at work all day, until 6 or 6:30 in the evening.  The prosecutor's questioning effectively pointed out that if appellant had actually feared harm at the hands of the victim reasonably or unreasonably, she had access to an automobile and had the *entire day* to take the couple's child and get to a place of safety.  Instead, she drove to the victim's workplace with the insecticide-laced milkshake for the purpose of poisoning him.  When appellant was asked, "Did you believe that when Gilbert Ortiz had the next opportunity, that he was actually going to kill you?", she replied "I don't know.  Probably."

Ex. 5 at 6-7.

The fact that Fuentes Ortiz was not sure whether she believed that her husband would kill her at his next possible opportunity is the strongest piece of evidence that she did not believe she was in imminent danger.  As the court of appeal said, "[w]hile one can envision situations in which a history of threats and physical abuse might be relevant to show that a defendant honestly but unreasonably (or indeed even reasonably) believed that bodily injury was imminent, here there was no evidence to indicate that appellant subjectively believed the she and the couple's child were in imminent danger when she made the decision to poison the victim." *Id.* at 6.

The court agrees with the California Court of Appeal that there was not substantial evidence that petitioner believed she or her child were in imminent danger, so the trial court's failure to give self-defense instructions was not a violation of due process.  *See Clark*, 450 F.3d at 904-05 (failure to give essential defense instruction does not violate due process if there is not evidence to support giving it).  Because there was no constitutional violation, the state appellate courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

**2.  The trial court did not violate petitioner's due process rights by instructing the jury on destruction of evidence using CALJIC 2.06.**

Fuentes Ortiz next challenges her conviction as a violation of due process, because, over her attorney's objection, the trial court instructed the jury using CALJIC 2.06: "If you find that defendant attempted to suppress evidence against herself in any manner, such as

7

by destroying evidence or by concealing evidence, this attempt may be considered by you as a circumstance tending to prove a consciousness of guilt.  However, this conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are for you to decide." RT 1128.

Fuentes Ortiz argued on appeal that the state of California had not presented evidence that she had suppressed evidence, and that the instruction was therefore unacceptable.  The Court of Appeal held that under California law there was a factual basis for the instruction, so giving the instruction was not an error.  Ex. 5 at 9.  From the evidence presented, the jury could reasonably infer that Fuentes Ortiz removed the sports bottle from the hospital room, thereby suppressing evidence that might have been used against her at trial.

Respondent contends that this issue is unexhausted, as the federal claim was raised in petitioner's brief to the court of appeal and in his petition for review to the California Supreme Court only by this sentence:  "This action by the court violated appellant's federal and California constitutional rights to due process.  (U.S. Const., Amend. XIV; Cal. Const., art. I, sect. 7, subd. (a), 15)."  Ex. 3 (Appellant's Opening Brief) at 30; ex. 6 (Petitioner for Review) at 22.  As respondent points out, this sort of "drive-by citation," *see Castillo v. McFadden*, 370 F.3d 882, 890 (9th Cir. 2004), is not sufficient to exhaust.  *See id.* at 889-90.  Therefore, this claim is not exhausted.  It can, however, be denied even though not exhausted.  *See* 28 U.S.C. § 2254(b)(2).

This court may not grant habeas relief unless the trial court's giving the destruction-of-evidence instruction so infected the entire trial that Fuentes Ortiz' right to due process was violated by her conviction.  *See Estelle*, 502 U.S. at 72.  The category of infractions that violate fundamental fairness is very narrow:  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle v. McGuire*, 502 U.S. at 73.

Here, the instruction did not violate any constitutional right because it was supported by evidence produced at trial.  The Fourteenth Amendment's due process requirement of

8

fundamental fairness was met here where the jury could reasonably infer that Fuentes Ortiz suppressed evidence. The jury could make such a reasonable inference based on the following facts, as enunciated by the Court of Appeal:

> When the victim was first brought to the hospital in an ambulance, a sports bottle containing the poisoned milkshake was also transported to the hospital; however it later disappeared. Patricia Kippels, a nursing supervisor on duty at the hospital when the victim was brought in, testified that she saw the sports bottle in the trauma room where the victim was being treated. Shortly after appellant left the trauma room, the sports bottle was missing, which caused Kippels to suspect appellant took the bottle.

Ex. 5 at 8. Patricia Kippels' testimony presented an issue of fact to be determined by the jury: whether Fuentes Ortiz suppressed evidence to be used against her at trial. The trial court advised the jury as to this issue of fact by charging them with CALJIC 2.06, allowing the jury to employ or ignore the instruction's permissive presumption.

It did not violate the Constitution when the trial court advised the jury that *if* they found that the evidence was suppressed or destroyed, *then* they could consider that suppression as indication that Fuentes Ortiz was conscious of her guilt. Inclusion of the word "if" in the instruction "unquestionably left it to the jury to determine" whether or not Fuentes Ortiz engaged in destruction of evidence. *See Estelle*, 502 U.S. at 73. Because the instruction did not require the jury to reach any conclusion unless they found evidence to support that conclusion, such instruction did not infect the entire trial so as to violate Fuentes Ortiz' right to a fair trial.

A reviewing court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982). No due process violation has occurred here, where any harm that Fuentes Ortiz may have suffered from the given instruction was cured by the other instructions recited by the court. The court employed CALJIC 17.30 to remind the jurors that they should disregard any jury instruction that relates to facts they did not find to exist. If the jury found that Fuentes Ortiz did not suppress evidence, CALJIC 17.30 instructed them not to consider CALJIC 2.06.

In short, giving the instruction did not violate due process.

9

1     Furthermore, even if the trial court had not given the destruction-of-evidence
2 instruction, the trial's outcome would have been the same. A habeas petitioner is not
3 entitled to relief unless the trial error "'had substantial and injurious effect or influence in
4 determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting
5 *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Although the court allowed the jury
6 to infer consciousness of guilt from the suppression of evidence, the prosecution presented
7 enough other evidence that Fuentes Ortiz was conscious of her guilt to satisfy this court
8 that the instruction did not have a substantial and injurious effect or influence on the verdict.
9 This evidence included Fuentes Ortiz' inconsistent statements to hospital staff and law
10 enforcement, her story about the child and the masked man in the parking lot, the
11 statement to Officer Hogan discouraging him from speaking to her husband, her apparent
12 disregard for her husband's welfare, and her disappearance to Mexico to avoid the
13 scheduled follow-up interview with Sergeant Anderson.  With the weight of this evidence,
14 the jury need not have relied on CALJIC 2.06 to reach the determination that Fuentes Ortiz
15 was guilty of attempted murder and concealment of a minor.  Giving the instruction was
16 harmless.
17     The state appellate courts' rejection of this claim was not contrary to, nor an
18 unreasonable application of, clearly established Supreme Court authority.

19     **3.    Petitioner's argument that imposition of restitution was either an ex post facto application of law, or in the alternative, unauthorized under former California Government Code, Section 13967(c), is without merit.**

21     Petitioner's final argument states that the imposition of restitution violated her right to
22 be free from ex post facto application of laws.  *See* U.S. CONST. art. I, § 10, cl. 1.  At
23 sentencing, the trial court imposed restitution in an amount to be determined, and not more
24 than $41,585. Ex. at  9.  To the extent that the victim had received assistance from the
25 Victims of Crime program, restitution would be payable to the State Restitution Fund.  *Id.* at
26 9-10.  The sentencing court did not specify what section of the California code empowered
27 it to order restitution to the third party Restitution Fund.  *Id.* at 10,  On appeal, Fuentes Ortiz
28 argued that restitution had been ordered under California Penal Code, Section 1202.45, a

10

statute that came into effect after the commission of the crime for which she was convicted, in violation of the rule against ex post facto application of the laws. The Court of Appeal, however, held as a matter of state law that ordering restitution was within the sentencing court's authority under former Section 13967(c) of the Government Code, Section 13967(c), which was in effect in March of 1992. *Id.* at 10. Thus, the restitution order did not involve an ex post facto application of a law, and this court has no power to review the purely state law determination. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982).

To the extent that Fuentes Ortiz argues that the imposition of restitution under former California Government Code, Section 13967(c) violated state law, this court has no jurisdiction to entertain that claim. A writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). It is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *Estelle*, 502 U.S. at 67-68. As to the alternative component of Fuentes Ortiz' third argument which argues the trial court improperly applied Section 13967(c) of the former California Government Code – a state law – habeas relief is unavailable, and this court cannot reach the merits of her claim.

The state appellate courts' rejection of the ex post facto claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 2, 2006

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\ORTIZ338.RUL

11